UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. _____

| | |
|---|---|
| CHEVES DARVILLE, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| EXECUTIVE TOWING & RECOVERY, INC., a Florida corporation, and ANTHONY J. ROSSO, individually, | ) ) ) ) |
|  | ) |
| Defendants. | ) |

**COMPLAINT FOR FAIR LABOR STANDARDS ACT OVERTIME VIOLATIONS**

Plaintiff, CHEVES DARVILLE, through undersigned counsel, files this Complaint for violations of the Fair Labor Standards Act against Defendants EXECUTIVE TOWING & RECOVERY, INC. ("ETR") and ANTHONY J. ROSSO ("Rosso") (collectively, "Defendants") seeking unpaid overtime wages, and alleges:

**JURISDICTION, VENUE, AND GENERAL ALLEGATIONS**

1. This is an action to recover money damages for unpaid overtime wages arising under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (the "Act" or the "FLSA").

2. The Plaintiff was a resident of Broward County, Florida at the time this dispute arose. He is still a resident of Broward County, Florida.

3. Defendant ETR is a Florida corporation with its principal address located in Broward County, Florida at 5900 Dewey St., Suite 200, Hollywood, Florida, 33023, and which regularly transacts business within the Southern District of Florida, including in Broward County,

1

Florida within the jurisdiction of this Court.  The Defendant was an employer of Plaintiff during the relevant time period described below.

4. Plaintiff is informed and believes that at all material times hereto, Defendant Rosso was and is presently a resident of Broward County, Florida.

5. This Court has jurisdiction pursuant to Section 216 of the Act.  This Court has federal question jurisdiction under 28 U.S.C. § 1331 as this civil action arises under the laws of the United States.

6. Venue is proper under 28 U.S.C. § 1391 because Defendant ETR resides in Broward County, Florida and all Defendants reside in the State of Florida.  Venue is also proper because a substantial part of the events or omissions giving rise to this claim occurred in Broward County, Florida, within the jurisdiction of this Court.

7. 29 U.S.C. §207(a)(1) states, "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

8. Defendants' business activities involve those to which the Act applies.  Both the Defendants' business and Plaintiff's work for the Defendants affected interstate commerce for the relevant time period.  Plaintiff's work for the Defendants affected interstate commerce during the relevant time period because the materials and goods that Plaintiff used on a constant and/or continual basis and/or that were supplied to him by Defendant to use on the job moved through interstate commerce prior to Plaintiff's use of the same.  Plaintiff utilized tow trucks and supplies

that had moved through interstate commerce. The Plaintiff's work for the Defendant was actually in and/or so closely related to the movement of commerce while he worked for the Defendant that the Act applies to Plaintiff's work for the Defendant.

9. Additionally, Defendant regularly employed two or more employees for the relevant time period who handled goods or materials that traveled through interstate commerce, or used instrumentalities of interstate commerce, thus making Defendants' business an enterprise covered under the Fair Labor Standard Act. Plaintiffs are informed and believe that a majority of the goods used by the Defendants in connection with its business were produced outside of the State of Florida.

10. Defendants obtain and solicit funds from non-Florida sources, accept funds from non-Florida sources, use telephonic transmissions going over state lines to do their business, transmit funds outside the State of Florida, and otherwise regularly engage in interstate commerce.

11. Plaintiff is informed that the Defendant corporation had gross sales or business done in in excess of $500,000 in both 2017 and 2018.

12. Upon information and belief, the Defendant corporation's gross sales or business exceeded or was expected to exceed $500,000 for the year 2019.

13. At all times material hereto, Defendant Rosso was the owner and President of ETR and a direct or indirect supervisor and employer of Plaintiff within the meaning of 29 U.S.C. 203(d). Among other things, Rosso had the power to hire and fire employees (and did hire and fire Plaintiff), supervised and controlled Plaintiff's work schedule and conditions of employment, determined the rate and method of payment for Plaintiff, and maintained some, though not all, required employment records.

14. Plaintiff was employed by Defendants from approximately April 2016 through his termination at the end of September 2019.

15. Plaintiff was employed by Defendants as a tow truck driver tasked primarily with recovering vehicles and transporting them to ETR's tow yard in Hollywood, Florida.

16. While employed by Defendants, Plaintiff was paid a rate of $30 per vehicle he towed or $15 per vehicle he released on scene.

17. Accordingly, Plaintiff was a "Pieceworker" for Defendants as that term is used in 29 C.F.R. 778.111.

18. Until approximately April 2019, Plaintiff typically worked a weekly schedule consisting of six (6) twelve-hour shifts, or approximately 72 hours weekly.

19. Beginning in approximately April 2019 through his termination, Plaintiff worked a weekly schedule consisting of five (5) twelve-hour shifts, or approximately 60 hours weekly.

20. Although Plaintiff was paid a piece rate, Defendants did not pay any overtime pay for the hours Plaintiff worked in excess of 40 in any given workweek.

21. Defendants willfully and intentionally refused to pay Plaintiff overtime pay during the three years preceding the filing of the Complaint as required by the Act since Defendants were aware of the overtime requirements of the Act and recklessly failed to investigate whether Defendants' payroll practices were in accordance with the Act. Notably, Defendants were previously sued under the FLSA in 2016 (though it was not a "piecework" case).

22. Defendants owe Plaintiff overtime wages for the period beginning three years prior to the filing of this Complaint through Plaintiff's termination in October 2019.

23. Prior to the completion of discovery and to the best of Plaintiff's knowledge, at the time of the filing of this Complaint, Plaintiff's good faith estimate and calculation of unpaid

overtime wages are as follows for the 154 workweeks from November 2016 through the workweek ending October 21, 2019:

    a. For the first 126 pay periods (each pay period being a single workweek) of the relevant period ending April 15, 2019, an average of 32 overtime hours per week = 4032 hours

    b. For the first 126 pay periods of the relevant period, an approximate regular rate of $15.28 per hour and a half-time rate of $7.64.

    c. Unpaid overtime for the first 126 pay periods of the relevant time period = $30,804.48 (does not include liquidated damages).

    d. For the remaining 27 pay periods of the relevant period, an average of 20 overtime hours per week = 540 hours

    e. For the remaining 27 pay periods of the relevant period, an approximate regular rate of $16.67 per hour and a half-time rate of $8.33.

    f. Unpaid overtime for the remaining 27 pay periods = $4,498.20 (does not include liquidated damages).

    g. Therefore, excluding liquidated damages, costs, and attorneys' fees, the total unpaid overtime for the relevant period is approximately $35,302.68.

24.     Plaintiff has retained the undersigned law firm to represent him in this action and is obligated to pay a reasonable attorneys' fee.

### COUNT I: VIOLATION OF OVERTIME PROVISIONS OF THE FAIR LABOR STANDARDS ACT

25.     Plaintiff incorporates and re-adopts the allegations contained in paragraphs 1-24 above as if set out in full herein.

26. During the relevant period of Plaintiff's employment (3 years prior to the filing of this Complaint through his termination), Defendants did not pay Plaintiff overtime wages for each hour over 40 that Plaintiff worked in any given workweek.

27. As such, Defendants owe Plaintiff overtime wages pursuant to the FLSA.

28. Defendants failed to properly disclose or apprise Plaintiff of his rights under the FLSA.

29. Because of Defendants' willful, intentional, and reckless violations of the FLSA's minimum wage and overtime provisions, Plaintiff is entitled to liquidated damages.

30. Plaintiff is entitled to an award of his reasonable attorneys' fees and costs pursuant to 29 USC 216(b).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Honorable Court enter judgment for Plaintiff against Defendants, jointly and severally, on the basis of the Defendants' willful violations of the FLSA, award Plaintiff actual damages in the amount shown to be due for unpaid overtime compensation for hours worked in excess of forty weekly, award Plaintiff an equal amount in liquidated damages, award Plaintiff reasonable attorneys' fees and costs of suit, and grant such other and further relief as this Court deems equitable and just.

## **JURY DEMAND**

Plaintiff demands trial by jury of all issues so triable as of right.

Dated: November 20, 2019                    Respectfully Submitted,

*/s/ Harris Nizel*
HARRIS NIZEL (Florida Bar No.: 0807931)
Email: harris@nizel.com
Nizel Law, P.A.
4700 Sheridan St., Suite J
Hollywood, FL 33021
Telephone: (954) 653-8300
*Counsel for Plaintiff*